**Lonnie SMITH, Plaintiff,**

v.

**The SCHOOL BOARD OF POLK COUNTY, FLORIDA,**
**Defendant.**

**No. 8:00–Civ–2627–T–24MSS.**

United States District Court,
M.D. Florida,
Tampa Division.

May 24, 2002.

Robert H. Grizzard, II, Law Office of Robert H. Grizzard, II, Lakeland, FL, for Lonnie Smith, plaintiff.

Dabney Loy Conner, Boswell & Dunlap, LLP, Bartow, FL, for Polk County School Board, defendant.

### *ORDER*

BUCKLEW, District Judge.

This matter came before the Court on a non-jury trial that was held May 13 – 16, 2002. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b). After considering all of the evidence, the pleadings filed by the parties, the arguments made by counsel, and the legal authorities submitted to the Court, the Court makes the following find-ings of fact and conclusions of law. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law consti-tute findings of fact, they are adopted as such.

### *I. Findings of Fact*

On July 1, 1996, Plaintiff Lonnie Smith was appointed interim principal at Haines City High School (in the Polk County, Florida School District) by Defendant Polk County School Board upon the recommen-dation of then-Superintendent, John A. Stewart. Plaintiff served as an interim principal at Haines City High School for the 1996–1997 and 1997–1998 school years. At all times material to this action, Plain-tiff was a member of the United States Air Force Reserve.

When Plaintiff was appointed interim principal of Haines City High School, the School Board had adopted a certification program for new principals in accordance with § 6A–4.0083 of the Florida Administra-tive Code. All new principals without principal certification in the Polk County School District were required to success-fully complete and be certified under the program. The program required a dem-onstration by the interim principal of hav-ing mastered nineteen designated Florida Principal Competencies.[1] If an interim principal successfully completed the pro-

---

**1.** The nineteen competencies are: (1) proac-tive orientation, (2) decisiveness, (3) commit-ment to mission, (4) concern for image, (5) interpersonal search, (6) organizational sen-sitivity, (7) information search, (8) concept formation, (9) conceptual flexibility, (10) managing interaction, (11) persuasiveness, (12) tactical adaptability, (13) achievement motivation, (14) development orientation, (15) management control, (16) organizational ability, (17) delegation, (18) self-presentation, and (19) written communication.

gram and was recommended for certification by the supervisory team, the Superintendent of the District would recommend to the Florida Department of Education that the interim principal receive certification as a principal.

As required by the certification program, Plaintiff, in consultation with his area superintendent, Carolyn Baldwin, selected Sharon Knowles and David Lewis as his peer principals.[2] Sharon Knowles and David Lewis, who together with Carolyn Baldwin and the Human Resources Development Representative, Wilson Strouse, comprised the supervisory team for Plaintiff's interim principal program. The interim principal program is driven by the interim principal who has the obligation of organizing and scheduling the activities and meetings required by the program, as outlined at the orientation. Wilson Strouse conducted the orientation for the certification program for all new interim principals for the Polk County School District on September 30, 1996.

The interim principal program required Plaintiff to complete certain tasks during the first three months of the program. These tasks included submitting annual goals, shadowing the peer principals, and arranging the initial meeting of the supervisory team.[3] Plaintiff was responsible for scheduling and performing these tasks. Plaintiff neither scheduled nor performed any of these tasks during the initial three month period.

In December of 1996, Carolyn Baldwin directed David Lewis to set up an appointment with Plaintiff for an orientation at Haines City High School. Although it was the responsibility of Plaintiff to schedule this orientation with Mr. Lewis, Mr. Lewis complied with Ms. Baldwin's request, and the orientation occurred on the campus of Haines City High School on January 27, 1997.

In March of 1997, while Plaintiff was away from the school on military leave, Dean Emery (who was a social worker at Haines City High School at the time) overheard a conversation between Ms. Baldwin and an assistant principal at Haines City High School (Ms. Lorango).[4] Dean Emery testified that Ms. Baldwin made a statement to Ms. Lorango that Plaintiff was going to have to make up his mind as to whether he wanted to be a principal or a soldier. Dean Emery also testified that he observed Plaintiff's military leave to be a source of agitation for Ms. Baldwin.

On April 3, 1997, Plaintiff was provided a copy of the Polk County Public Schools Administrative Performance Appraisal completed by his supervisor, Carolyn Baldwin.[5] Ms. Baldwin rated Plaintiff "at expectation" on all of Plaintiff's performance criteria.

On April 16, 1997, Plaintiff met with the team. At this meeting, the team reviewed Plaintiff's program and found that there were no interim program professional de-

---

2. Plaintiff initially selected Sharon Knowles and Jane McTeer as his peer principals, but after consulting with Carolyn Baldwin, Plaintiff selected Sharon Knowles and David Lewis.

3. See Plaintiff's Exhibit # 1, page 31 –32.

4. The date on which Dean Emery overhead the conversation is unclear. Dean Emery testified that it occurred in March or April while Plaintiff was out on military leave, and that it occurred shortly after he (Dean Emery) came

back from his surgery that occurred on March 15th. Dean Emery also appeared to say that it occurred in 1998. However, a review of Plaintiff's military leave requests reveals that he was on military leave from March 24 – 26, 1997, and he was not on military leave during March or April of 1998. (See Plaintiff's Exhibit # 3). Therefore, the Court concludes that Dean Emery likely overheard the conversation in March of 1997.

5. See Plaintiff's Exhibit 14, p. 15–16.

velopment goals, that the monthly developmental activities plan was incomplete, and that no peer shadowing had occurred or was scheduled. At this meeting, Plaintiff was advised by the team that it was unlikely that the team would recommend him for certification under the interim principal program, because Plaintiff had not met the interim principal requirements.

After the April 16, 1997 meeting, the team expressed concern relating to Plaintiff's complacency with respect to the interim principal program and Plaintiff's level of completion of the program up to that point. The team agreed that Ms. Knowles, Mr. Lewis, and Ms. Baldwin would complete independent analyses of their interactions with Plaintiff relating to the Florida Principal Competencies.

On June 11, 1997, Carolyn Baldwin met with Plaintiff and discussed her concerns regarding Plaintiff's activities, job performance as interim principal of Haines City High School, and his progress on the program. At this time, Ms. Baldwin advised Plaintiff that the team had decided that they would not be able to "sign off" on Plaintiff's performance of the Florida Principal Competencies, because he had not yet demonstrated mastery of them. Ms. Baldwin also told Plaintiff that a plan would be created to assist him in mastering the required competencies.

On June 19, 1997, the team met to determine Plaintiff's areas of need and development. Wilson Strouse circulated a list of the nineteen Florida high school principal competencies (of which Plaintiff needed to demonstrate mastery in order to meet the requirements of the program), and he asked each team member to individually identify those areas in which Plaintiff had developmental needs.

Wilson Strouse took the areas of the principal competencies in which all team members individually specified that Plaintiff had developmental needs and, with Carolyn Baldwin, created a program for Plaintiff to address those needs. This program was entitled "Florida Principal Competencies ... Analysis of Developmental Needs for Lonnie Smith, Interim Principal, Haines City High School" ("the action plan").[6]

The action plan was presented to Plaintiff on August 14, 1997 at a meeting attended by Superintendent of Schools, Glenn Reynolds (who by this time had succeeded John Stewart as Superintendent of Schools), Carolyn Baldwin, Wilson Strouse, and Assistant Superintendent of Personnel, Dennis Dunn. Plaintiff was advised at this meeting that his interim principal program would be extended a year.

The action plan compiled by Carolyn Baldwin and Wilson Strouse contained eleven items for recommended attention. The last of these included the recommendation that Plaintiff "[l]imit military leave time to a minimum so as to concentrate on successful demonstration of all duties comprehensive of the principalship."[7]

On January 26, 1998, the team (with the exception of Mr. Strouse) met to review Plaintiff's progress on the program. The team members expressed concern regarding Plaintiff's leadership in the instructional/academic programs at Haines City High School and the need for an academic plan for the school.

---

**6.** See Plaintiff's Exhibit # 2.

**7.** See Plaintiff's Exhibit # 2, p. 12. Plaintiff was out on military leave at the following times during the 1996–1997 school year: (1) December 26–27, 1996; (2) February 18–28, 1997; (3) March 24–26, 1997; (4) May 15–16, 1997; (5) June 16, 1997; and (6) July 1–3, 1997. (See Plaintiff's Exhibit # 3).

On March 5, 1998, the team again met and reviewed Plaintiff's progress on the plan and the program. The team's concern regarding the high school's academic plan was again discussed. Plaintiff was requested to prepare a written description of a plan for improving the high school's academic and instructional performance.

Plaintiff subsequently submitted an academic plan to the team members. Each of the team members found shortcomings in the plan in that it (1) was too general in nature and not well developed; (2) lacked substance; (3) was poorly written; and (4) was difficult to understand.

Another team meeting was scheduled for March 16, 1998. Plaintiff advised the team that he could not attend the meeting because he was undergoing surgery. Plaintiff was offered the opportunity to postpone the meeting, but he stated that the team should meet without him. The team met without Plaintiff on March 16, 1998.

At the March 16th meeting, the team reviewed the material submitted by Plaintiff and then concluded, individually and collectively, that Plaintiff had not successfully completed the program in that he had failed to demonstrate satisfactory performance of the nineteen Florida Principal Competencies. At this meeting, the team determined that it could not recommend to Superintendent Reynolds that Plaintiff be certified as a principal. Plaintiff's military service was not discussed at any point in this meeting. A memorandum was prepared by Wilson Strouse to Glenn Reynolds, dated March 16, 1998, recommending that Plaintiff not receive certification as a principal.[8]

The team agreed at the March 16, 1998 meeting that Ms. Baldwin, as Plaintiff's supervisor, would complete Plaintiff's evaluation of his performance as interim principal at Haines City High School. On March 17, 1998, Ms. Baldwin prepared Plaintiff's principal performance summary assessment and rated Plaintiff "ineffective" in four clusters of the Florida Principal Competencies and gave detailed, explicit reasons for these ratings.[9] Specifically, Ms. Baldwin rated Plaintiff ineffective in the areas of (1) proactive orientation, (2) sensitivity, (3) analysis, and (4) leadership.

Sharon Knowles, a peer principal on Plaintiff's team, testified that Plaintiff was deficient in the areas of academic planning, decision making, and instructional leadership. Ms. Knowles cited specific examples, such as Plaintiff's decision to delay evacuating the school when being advised of a bomb threat and his decision to attend a scholarship competition at another school during the time that a law enforcement officer had been killed in the community and his school was in a lockdown. Ms. Knowles further concluded that Plaintiff's failure to move the interim principal program along in the beginning indicated a lack of responsibility on his part.

David Lewis, the other peer principal on Plaintiff's team, concluded that Plaintiff was deficient in the areas of instructional leadership, decisiveness, and judgment. Specific examples cited by Mr. Lewis included Plaintiff's lack of leadership in response to a tornado disaster, along with Plaintiff's failure to return to his school during a lockdown of the school after the shooting death of a law enforcement officer in the neighborhood. Mr. Lewis also cited Plaintiff's inability to properly prepare and present an academic and instructional plan for Haines City High School.

Glenn Reynolds, Superintendent of Polk County District Schools, testified that after

---

8. See Defendant's Exhibit # 8.

9. See Defendant's Exhibit # 12.

receiving the recommendation of Plaintiff's team that he not recommend to the Florida Board of Education that Plaintiff be certified as a high school principal, he personally inquired of the team members as to the reasons for their refusal to recommend certification. Upon satisfying himself that Plaintiff had failed to meet the competencies required by the program, Mr. Reynolds decided not to recommend certification of Plaintiff as a high school principal. On March 20, 1998, Superintendent Reynolds met with Plaintiff, Carolyn Baldwin, and Dennis Dunn and advised Plaintiff that he would not recommend certification of Plaintiff as a high school principal to the Florida Department of Education.

Dennis Dunn, Assistant Superintendent for Personnel, testified that he was present at the meetings held with Plaintiff on August 14, 1997 and March 20, 1998, and that Plaintiff's participation in the military and resulting absence from school was never an issue. Mr. Dunn further testified that the following (1998–1999) school year, Plaintiff was offered and accepted a position as a teacher within the Polk County School District.

All of the team members (Carolyn Baldwin, Sharon Knowles, David Lewis, and Wilson P. Strouse), Superintendent Glenn Reynolds, and Assistant Superintendent Dennis Dunn testified that Plaintiff's participation in the United States Air Force Reserves was not a factor in the decision not to recommend certification of Plaintiff as a high school principal to the Florida Department of Education. The reason for not recommending Plaintiff for the principalship certification was Plaintiff's failure to successfully complete the competencies required by the program.

## II. Conclusions of Law

Plaintiff is a person who is entitled to protection pursuant to 38 U.S.C. § 4311, since he is a member of the United States Air Force Reserves. Plaintiff has established (and Defendant acknowledges) that Plaintiff was not recommended to be certified as a high school principal by Defendant at a time when Plaintiff was protected by the provisions of 38 U.S.C. § 4311. Defendant is a private employer pursuant to 38 U.S.C. § 4323.

■■■ The burden shifting framework approved by the Supreme Court in *NLRB v. Transportation Management Corporation*, 462 U.S. 393, 401, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), is used to determine whether Defendant violated 38 U.S.C. § 4311.[10] Defendant shall be considered to have engaged in actions prohibited under 38 U.S.C. § 4311 if Plaintiff can show that his membership in the United States Air Force Reserves was a motivating factor in Defendant's decision not to recommend that Plaintiff be certified as a high school principal. "A 'motivating factor,' is not necessarily the sole cause of the [challenged] action, but rather it is one of the factors that 'a truthful employer would list if asked for the reasons for its decision.'" *Sanguinetti v. United Parcel Service, Inc.*, 114 F.Supp.2d 1313, 1318 (S.D.Fla.2000) (quoting *Brandsasse v. City of Suffolk Va.*, 72 F.Supp.2d 608, 617 (E.D.Va.1999)); *see also Robinson v. Morris Moore Chevrolet–Buick, Inc.*, 974 F.Supp. 571, 576 (E.D.Tx. 1997) (citation omitted). Thus, member-

---

**10.** *See Sanguinetti v. United Parcel Service, Inc.*, 114 F.Supp.2d 1313, 1318 (S.D.Fla. 2000), *aff'd*, 254 F.3d 75 (11th Cir.2001), (citing *Gummo v. Village of Depew, NY*, 75 F.3d 98, 106 (2d Cir.1996), *cert. denied*, 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996)); *Robinson v. Morris Moore Chevrolet–Buick, Inc.*, 974 F.Supp. 571, 575 (E.D.Tx. 1997) (citations omitted); *Sheehan v. Department of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir.2001) (citations omitted).

ship in the military " 'is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration.' " *Sanguinetti,* 114 F.Supp.2d at 1318 (quoting *Robinson,* 974 F.Supp. at 576).

 Defendant, however, can avoid liability under 38 U.S.C. § 4311 if it proves by a preponderance of the evidence that its decision not to recommend that Plaintiff be certified as a high school principal would have been made in the absence of consideration of Plaintiff's membership in the United States Air Force Reserves. *See Robinson,* 974 F.Supp. at 576 (citations omitted). Defendant "cannot meet its burden ... by 'merely showing that at the time of the decision it was motivated only in part by a legitimate reason.' " *Id.* (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 252, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). Instead, Defendant "must show that its legitimate reason, standing alone, would have induced it to make the same decision." *Id.*

### A. 1996–1997 School Year

 After considering the evidence presented at trial, particularly the action plan referencing Plaintiff's military leave and Ms. Baldwin's comment that Plaintiff needed to decide whether he wanted to be a principal or a soldier, the Court finds that Plaintiff has met his burden of proving that his membership in the United States Air Force Reserves was a motivating factor in Defendant's decision not to recommend that he be certified as a principal at the end of the 1996–1997 school year.

 The Court, however, also finds that Defendant has met its burden of proving that it would have made the same decision not to recommend certification in the absence of consideration of Plaintiff's membership in the United States Air Force Reserves. Specifically, the Court finds

that the supervisory team's conclusion that Plaintiff had not adequately completed the interim principal program at the end of the 1996–1997 school year is a legitimate reason for not recommending that Plaintiff be certified as a principal. The evidence presented at trial shows that Plaintiff did not follow through with the requirements of the program in a timely manner. Therefore, even if the Court believes that Plaintiff would have made a fine principal or that Defendant made the "wrong" decision (even in the absence of consideration of his military status), Defendant cannot be held liable, because the Court finds that Defendant has shown that the same decision would have been made if it had not considered Plaintiff's membership in the United States Air Force Reserves. *See Fink v. City of New York,* 129 F.Supp.2d 511, 521 n. 2 (E.D.N.Y.2001) (noting that "it is not sufficient to find that an employment decision was simply wrong" and that it is not proper to second guess business decisions just because the trier of fact disagrees with them).

### B. 1997–1998 School Year

 After considering the evidence presented at trial the Court finds that Plaintiff has not met his burden of proving that Plaintiff's membership in the United States Air Force Reserves was a motivating factor in Defendant's decision not to recommend Plaintiff for certification as a principal at the end of the 1997–1998 school year. Instead, the Court finds that Plaintiff has not shown that his military status was considered when the decision not to recommend certification was made.

 Furthermore, even if the Court had found that Plaintiff had shown that his membership in the United States Air Force Reserves was a motivating factor in Defendant's decision not to recommend him for certification at the end of the

1997–1998 school year, Defendant still would have escaped liability due to its proffered legitimate reasons for failing to recommend him. Specifically, the Court finds that the supervisory team's conclusion that Plaintiff had not adequately completed the interim principal program at the end of the 1997–1998 school year to be a legitimate reason for not recommending that Plaintiff be certified as a principal.

The evidence presented at trial shows that the supervisory team found Plaintiff to be deficient in several areas at the end of the 1997–1998 school year. For example, Ms. Baldwin found Plaintiff to be deficient in the areas of proactive orientation, sensitivity, analysis, and leadership. Additionally, Ms. Knowles concluded that Plaintiff was deficient in the areas of academic planning, decision making, and instructional leadership. Likewise, Mr. Lewis found Plaintiff to be deficient in the areas of instructional leadership, decisiveness, and judgment.

Therefore, as stated above, Defendant cannot be held liable for the decision made at the end of the 1997–1998 school year because (1) Plaintiff has not shown that his membership in the United States Air Force Reserves was a motivating factor in Defendant's decision not to recommend him for certification at the end of the 1997–1998 school year, and (2) Defendant has shown that it would have made the same decision in the absence of consideration of Plaintiff's military status.

### III. Conclusion

Accordingly, it ORDERED AND ADJUDGED that the Clerk is directed to enter judgment in favor of Defendant and to close this case.